IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANTHONY GOWDY | : | NO. 08-146 |

**MEMORANDUM AND ORDER**

**Gene E.K. Pratter, J.**                                                                                                          **January 13, 2009**

Anthony Gowdy asks the Court to exclude from evidence at his upcoming trial on charges of possessing counterfeit currency and aiding and abetting, in violation of 18 U.S.C. §§472 and 2, certain counterfeit currency allegedly seized in violation of Mr. Gowdy's Fourth Amendment rights and the resulting inculpatory statement Mr. Gowdy gave to Secret Service Special Agent Kelly Fincher. The essence of Mr. Gowdy's suppression motion is that the counterfeit currency was out of sight, either in a closed paper bag or a locked safe, neither of which law enforcement officers had authority to search. Because the subsequent statement given by Mr. Gowdy was a by-product of this seizure, Mr. Gowdy urges the Court to preclude the Government's use of either the currency or the statement at trial. For the reasons set forth below, the Court denies the motion and, unless new grounds for objection present themselves, will permit the Government to offer the subject evidence at trial.

**FACTUAL BACKGROUND**

The Court held an evidentiary hearing to address the challenges presented by Mr. Gowdy's motion. At the hearing three law enforcement officers testified, as did two friends of

Mr. Gowdy[1] and Mr. Gowdy himself. As it relates to information germane to the suppression motion, the witnesses describe the following events.

The owner of a vacant catering hall and bar at 4721 Oxford Avenue in Philadelphia contacted the police on February 20, 2008 to report his concern that trespassers were staying in those premises without permission.[2] The owner unlocked the front door and let Philadelphia Police Officer John Descher and Officer Quinn into the building. According to Officer Descher, the police instructed the owner to remain at the front door while the officers announced their presence and proceeded to investigate the interior premises. They heard music as well as a dog barking. As they got closer to the dog and the source of the music, the police smelled a strong odor of marijuana. They again yelled out notice of their presence and called for any people present to come out. They "banged on the door" to a room from which the music, barking and marijuana seemed to emanate. (Descher N.T. 6-8) The police did not have or seek a search warrant.

Mr. Gowdy came out of the room and presented himself to the police, followed by Mr. Gowdy's friend, Angel King.

---

[1] Initially, Mr. Gowdy had intended to call Angel King as well. However, in order to allow Ms. King to seek counsel concerning potential implication of her Fifth Amendment privilege, the hearing adjourned. When the hearing reconvened, Ms. King had make known her intention to invoke her constitutional rights and she was not called as a witness.

[2] Mr. Gowdy suggests that he had the permission to use the premises for shelter from a person known as "Rolex." A defense witness, Sherille Haywood, surmised that Rolex was "like part owner or something like that," though she knew "the actual person who owned the club...is Oscar." Oscar Zatz was the person who contacted the police, met the officers at the premises and unlocked the door to let them in. The Court received no credible evidence that Rolex had at any time - - or reasonably could have been perceived as having - - authority to permit itinerants to dwell in the vacant bar or club establishment.

Once the dog was secured, Officer Descher testified that he entered the area which still smelled of marijuana. He testified that he saw two scales on a kitchen table as well as some plastic bags containing a substance the officer recognized as marijuana. He also saw a brown paper lunch bag, protruding from which he "could see the edges of what [he] believed was United States currency." After further securing the area and seeing to the transport of Mr. Gowdy and Ms. King to the Northeast Detective Division, Officers Descher and Quinn began to count the currency. In the process, Officer Descher noticed that the currency did not feel like authentic currency, and this prompted him to look at the bills more closely. He observed that among all the many bills there were only six different serial numbers, at which point he told the detectives to contact the Secret Service. Special Agent Kelly Fincher of the Secret Service subsequently determined that the currency was counterfeit. Special Agent Fincher and John Clark advised Mr. Gowdy of his Miranda rights, which Mr. Gowdy waived. He acknowledged that the money was counterfeit and said he was holding it for a friend.

Mr. Gowdy contends that he had been living in the vacant club premises for almost two months with "everything" he owned. (Gowdy N.T. 8) He suggests that the owner was aware that he was living at the premises. (Gowdy N.T. 10) He also suggested that he made intermittent payments to an intermediary, "Rolex," to pay for certain utilities at the premises. (Gowdy N.T. 17) According to Mr. Gowdy, the currency actually was held, entirely out of the sight of the officers, in a container variously described as a locked safe, lockbox, or cream-colored or white briefcase. As the defense points out, the precise nature of the container is far less important as a legal matter than is the issue of whether the currency was visible to Officer Descher without his having to unlock or open the container. Logically, however, it is considerably easier to envision

3

the currency being in the Officer's "plain view" and/or appropriately inventoried as attendant to Mr. Gowdy's arrest and removal from the premises by the police if it was in a small brown open-topped lunch bag near the marijuana than if it was inside a closed safe, lockbox or briefcase. Officer Descher's testimony, as described above, was unequivocal as to where he saw and retrieved the currency.  Mr. Gowdy, on the other hand, initially testified that not only the currency but also the scales and the marijuana, plus various paperwork, all were in his safe. (Gowdy N.T. 13-14)  He also later testified, however, that the scales were in a shoebox behind the bar in the rooms he used. (Gowdy N.T. 14)  With respect to the safe or lockbox, Mr. Gowdy testified that it was locked on the day in question but, in response to the Court's questions, acknowledged that the key to the safe/lockbox had been in his jacket and no police officer asked for or was given the key.  Mr. Gowdy said he had not seen his key since February 20, 2008 until the day of the suppression hearing when his counsel presented the safe in court.  Mr. Gowdy admitted that his brother had removed all of Mr. Gowdy's possessions from the club, including the safe and the safe key. (Gowdy N.T. 33-34)  He never had any key to the premises or to the room he occupied, (Gowdy N.T. 30-31) and had to rely on the actions of others to enter the premises when they were locked.  Neither of Mr. Gowdy's witnesses had relevant testimonial evidence as to the location of the currency when the officers arrived at the scene.

**DISCUSSION**

The legal issues alternatively presented by this motion are:  (1) Were the officers legitimately at the Oxford Avenue location and was Mr. Gowdy living there without appropriate permission?  (2) Is there some basis on which Mr. Gowdy can claim an expectation of privacy either for the space he occupied or for the container holding the currency?  (3) Was the currency

in the officer's "plain view" and/or was it appropriately seized and inventoried once Mr. Gowdy was arrested?

The Court concludes that the police were legitimately on the property at the owner's request to address a matter of appropriate concern, namely, the possibility of unauthorized persons using a shuttered commercial establishment to live in.  Indeed, that is what the police actually encountered.  The defense witnesses' loose descriptions, including Mr. Gowdy's own rendition, of the supposed authorization by the elusive "Rolex" for Mr. Gowdy to live there were not credible or consistent.  Furthermore, the circumstances of the conditions under which Mr. Gowdy did live there do not persuade the Court that as a "squatter" Mr. Gowdy had any reasonable expectation of privacy in the room(s) he occupied.  He had no keys to the premises; he knew that the actual owner and occasional realtors came to portions of the premises; he could not secure the premises; he did not lock the room(s) he occupied; he had no financial obligations for the premises; and it is reasonable to assume his dog would provide him with a warning when someone was coming close, thereby either allowing Mr. Gowdy to elude confrontation in an exigency or interact with whoever was coming, as he deemed appropriate under the circumstances.  Indeed, Mr. Gowdy admitted to having to leave the premises unlocked even though all of his personal possessions were there.  Under the circumstances, Mr. Gowdy did not describe himself as conducting his affairs so as to demonstrate any legitimate expectation of privacy in the room(s) the police entered.  Rakas v. Illinois, 439 U.S. 128, 143 (1978); Minnesota v. Carter, 525 U.S. 83, 90-91 (1998).  Moreover, Mr. Gowdy's conduct in occupying unbidden the premises in question for apparently suspect purposes is not conduct that society would countenance by extending its recognition of it as creating circumstances that suggest a legitimate

5

expectation of privacy.  United States v. Pollard, 215 F.3d 643, 647 (6th Cir. 2000).

However, even if by some standard, Mr. Gowdy harbored such expectations, the circumstances here overcome those expectations.  The officers unquestionably smelled marijuana coming from the space Mr. Gowdy used.  The testimony that both scales and bagged marijuana were openly observed by the police upon entering the interior space was more credible than Mr. Gowdy's varying descriptions of the places where he contends these items were secreted.  While it may be logical for Mr. Gowdy to have kept his personal identification papers in a safe or lockbox, the same cannot be said for currency that was, according to him, neither his nor authentic.  It also appears more likely that the paper bag was an easier means by which to grab the currency in a rush if such a need arose or to use it if it was related to possible marijuana-based transactions  Therefore, it is easier for the Court also to believe Officer Descher's testimony that he saw the currency protruding from a paper bag, than it is to accept Mr. Gowdy's story about the locked safe and its elusive key.  Once the currency (as well as the illegal drug material) is in the officer's "plain view," its seizure is well within acceptable police practice.  Horton v. California, 496 U.S. 128, 140, 142 (1990); Coolidge v. New Hampshire, 403 U.S. 443, 456-466 (1971).

Although the Court's foregoing conclusions suffice to resolve the pending motion, there is an alternative basis on which the law enforcement authorities came to secure the counterfeit currency.  Inasmuch as the circumstances justified Mr. Gowdy arrest for possession of narcotics and/or burglary, the subsequent inventorying of the other items seized was also well within acceptable police procedure, all as described by the law enforcement witnesses.  Florida v. Wells, 495 U.S. 1, 4 (1990); United States v. Frank, 864 F.2d 992, 1001 (3d Cir. 1989).  Once the

currency was legitimately (and literally) in Officer Descher's hands, the subsequent recognition of it as being counterfeit followed. Hence, the reference to the seized currency was an appropriate prologue to the <u>Miranda</u>-ized interview which resulted in Mr. Gowdy's confession.

## **CONCLUSION**

For the foregoing reasons Mr. Gowdy's suppression motion is denied by way of the accompanying Order.

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANTHONY GOWDY | : | NO. 08-146 |

**O R D E R**

AND NOW, this 13th day of January, 2009, upon consideration of the Defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment (Docket No. 20) and the Government's responses thereto (Docket No. 22 ) as well as the Defendant's Reply to the Government's Response and Supplemental Memoranda (Docket Nos. 26 and 40), and following an evidentiary hearing in open court, it is **ORDERED** that the motion is **DENIED**.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge